NO. 07-05-0299-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 28, 2006

_____

IN THE INTEREST OF J.T.W., A MINOR CHILD

_____

FROM THE COUNTY COURT AT LAW OF RANDALL COUNTY;

NO. L-3592; HONORABLE JAMES W. ANDERSON, JUDGE

_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellants Robert Lloyd White, II and Nanci Terese White, proceeding *pro se*, appeal the trial court's order terminating their parental rights to their daughter J.T.W. and appointing the Texas Department of Family and Protective Services sole managing conservator.[1] The Whites did not file a brief pursuant to Rule 38.1 of the Texas Rules of

---

[1]By order dated November 22, 2005, we granted retained counsel's motion to withdraw and advised the Whites that a *pro se* litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *See* Holt v. F.F. Enterprises, 990 S.W.2d 756, 759 (Tex.App.--Amarillo 1998, pet. denied).

Appellate Procedure; instead, they filed several letters by which they challenge, among other things not material to our disposition, the legal sufficiency of the evidence to support the trial court's order.[2]  We affirm.

Appellants do not present a fact statement as required by Rule 38.1(f); however, by its brief, the Department presents a fact statement supported by references to the voluminous reporter's record and clerk's record.  By letter, the attorney ad litem for the child adopts the Department's brief in its entirety.  An appellate court is not required to search a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid.  Granada Biosciences, Inc. v. Barrett, 958 S.W.2d 215, 222 (Tex.App.--Amarillo 1997, pet. denied).  Because the Whites did not challenge the Department's fact statement, we will refer to it for all purposes.

The Whites are not uneducated persons.  To the contrary, Robert holds Ph.D. and M.D. degrees.  Nanci holds a Master of Science degree and a Ph.D.  Notwithstanding their education, the jury found by clear and convincing evidence that the parent/child relationship should be terminated.

The Whites adopted J.T.W in China in 2001 and brought her to their home in Corpus Christi.  The Department first became aware of the family in February and March 2002 upon

---

[2]The Whites question the authority of a court reporter to act as a "gatekeeper" for appellate courts.  We note that a complete reporter's record was filed in this appeal accompanied by a letter from the Official Court Reporter indicating she filed the completed record without having received final payment.  Any complaints regarding court reporters are better directed to the Court Reporter's Certification Board.

reports that Nanci had been hospitalized with psychotic, extremely manic and delusional characteristics, and aggressive behavior toward Robert and others. Her treating physician recommended that J.T.W. not be left alone with Nanci because she was emotionally disturbed, unpredictable, and potentially violent. While residing in Corpus Christi, Robert violated the safety plan by allowing J.T.W. to be alone with Nanci. The Department took custody of the child in March 2002, which continued until December 2002. During this period, the Corpus Christi Police Department continued to receive calls to the home and on one occasion, Robert showed them a pile of broken pictures and other broken items. During the Whites' residency in Corpus Christi, there were a total of 37 police reports generated resulting from calls to their home.

After they moved to Randall County, in January 2004, the Sheriff's Office made eight contacts with the family prompted by Nanci contacting several people and reporting that Robert had either committed suicide, was mentally ill, or had been murdered. During a visit in the home, a caseworker found the child alone with Robert while he was very disorganized and he stated he took medication for depression. Among other things, Robert reported he had seen a therapist because he had attempted suicide and had been hospitalized. Reports also indicated that Nanci had been diagnosed with schizophrenia and bipolar disorder with psychotic features. On one occasion, Nanci chose to spend a night in jail due to paranoia of her home, Robert, and her medications. She also believed the Hispanic mafia killed her father despite his death certificate providing he died of respiratory arrest. Robert believed Nanci's concerns were well founded.

3

The trial court appointed a special advocate. Among other concerns, the advocate's July 6, 2005 report provided the following:

- [Robert] takes his medications occasionally;
- [Nanci] has a history of discontinuing her medication against doctors' orders;
- [Robert] has a history of writing refills on [Nanci's] long term medications;
- past and current psychological history of both parents;
- [Nanci's] history of suicide attempts;
- [Robert] suffers from depression; and
- [Robert] does not recognize [Nanci's] mental instability as a problem and often blames their situation on incompetent doctors, lawyers, judges, and retaliation by [the Department].

The report concluded with a recommendation that the child continue placement in the current foster home and that the Whites' parental rights be terminated.

Appellate courts are required to liberally construe briefing rules for appeal. Texas Mexican Ry. Co. v. Bouchet, 963 S.W.2d 52, 54 (Tex. 1998). Therefore, we consider the Whites' contention that "[n]ot one scintilla of evidence has been adduced in any testimony, document or court record that [J.T.W.] was ever harmed, injured, abused, threatened, endangered or neglected in any way" as presenting a challenge to the legal sufficiency of the evidence to support the jury's finding that termination of their parental rights was in J.T.W.'s best interest. We conduct our review on the standard set forth in In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).

4

The Department alleged that Nanci knowingly allowed J.T.W. to remain in conditions or surroundings which endangered her physical and emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp. 2005). Robert was alleged to have (1) knowingly allowed J.T.W. to remain in conditions or surroundings which endangered her physical or emotional well-being and (2) engaged in conduct or knowingly placed J.T.W. with persons who engaged in conduct which endangered her physical or emotional well-being. *See* § 161.001(1)(D), (E).

Viewing the evidence summarized above in the light most favorable to the jury's finding to determine whether it could have formed a firm belief or conviction that its finding was true, *see In re J.F.C.*, 96 S.W.3d at 266, we conclude the trial court's termination order is supported by legally sufficient evidence. The Whites' contention is overruled.

Additionally, the Whites do not present a clear and concise argument for their contention with appropriate citations to authorities as required by Rule 38.1(h). Failure to present argument with citations to authorities and to the record amounts to waiver of the issue. *See* Nguyen v. Kosnoski, 94 S.W.3d 186, 188 (Tex.App.--Houston [14th Dist.] 2002, no pet.).

Accordingly, the trial court's judgment is affirmed.

Don H. Reavis
Justice

5